WILLIAM G. MORSE,

                                Plaintiff,                    DECISION AND ORDER

          -v-                                                 10-CV-6306 CJS

PATRICK FITZGERALD, Ontario County Deputy Sheriff,
MATTHEW ASQUINO, Ontario County Deputy Sheriff,[1]

                                Defendants.

APPEARANCES

For Plaintiff:                  William G. Morse, *pro se*
                                HC 5 Box 50
                                Gainsville, Missouri 65655

For Defendants:                 Michael G. Reinhardt, Esq.
                                Ontario County Attorney's Office
                                27 North Main Street, 4th Floor
                                Canandaigua, New York 14424-1447

INTRODUCTION

     This is an action in which William Morse ("Plaintiff") alleges that the two defendant

sheriff's deputies falsely arrested him and used excessive force during the arrest, thereby

violating his federal constitutional rights and committing various torts under New York State

law.  Now before the Court are the parties' competing motions for summary judgment.  For

the reasons discussed below, both applications are granted in part and denied in part.

---

[1]The Complaint incorrectly refers to Asquino as "Acusto."

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case. On or about March 21, 2008, Plaintiff issued a check in the amount of $665.34 to his fuel oil supplier, E&V Energy Co. ("E&V"). According to Plaintiff, E&V required him to issue the check before it would deliver fuel oil to his home. However, Plaintiff contends that it was understood that E&V would not actually cash the check, since his fuel oil bill was going to be paid by the government-funded Home Energy Assistance Program ("HEAP"). E&V delivered the fuel oil to Plaintiff's home, and he subsequently stopped payment on his check. On April 21, 2008, E&V notified Plaintiff that his check was returned by the bank for insufficient funds. Plaintiff contends, though, that E&V was not actually owed anything, since HEAP paid E&V for the fuel.

Nevertheless, on June 6, 2008, E&V contacted the Ontario County Sheriff's office to lodge a complaint against Plaintiff for the returned check. The same day, defendant Ontario County Deputy Sheriff Patrick Fitzgerald ("Fitzgerald") and Ontario County Deputy Sheriff Matthew Asquino ("Asquino") visited E&V in response to the complaint, and obtained a copy of Plaintiff's check and a "protest letter" from E&V.[2] At approximately 5:00 p.m. that day, Fitzgerald and Asquino drove their marked police vehicle to Plaintiff's home. At that time, Plaintiff was inside the house with his wife and children. The officers knocked, and Plaintiff went to the door, but remained inside the house behind a closed screen door. The officers

_____

[2]At some point, E&V employee Becky Reynold's signed an information accusing Plaintiff of committing the Class B misdemeanor Issuing a Bad Check. See, Docket No. [#37-11] at p. 17. The information is dated June 6, 2008, however, there is no evidentiary proof in admissible form in the record to indicate when the information was actually executed. Moreover, there is no indication that the information was executed prior to Defendants arresting Plaintiff.

2

spoke to Plaintiff through the screen door, and asked him to step outside, because they had received a complaint about a bad check. Plaintiff refused to come outside, but said that he was aware of the check complaint, and that he had paperwork refuting E&V's claim of non-payment. Specifically, Plaintiff claimed to have a statement showing a credit on his account. At that point, Fitzgerald told Asquino to stay with Plaintiff, and then walked back to his car to retrieve the cancelled check and protest letter from E&V. Plaintiff then turned from the screen door and went into his living room to look for his paperwork. While Plaintiff was doing that, Asquino opened the screen door and walked into Plaintiff's kitchen, uninvited, and stood there watching Plaintiff. Upon realizing that Asquino was inside the house, Plaintiff asked him why he was in the house, but Asquino did not respond or go back outside.[3] Upon locating his paperwork, Plaintiff walked back toward the door, and Asquino went back outside. Plaintiff remained inside the closed screen door.

Having returned to the house from the police car with the check and protest letter, Fitzgerald again asked Plaintiff to come outside. Plaintiff refused, and said that he knew that the officers could not arrest him at his home without a warrant. Fitzgerald responded that he was going to issue Plaintiff an appearance ticket, but Plaintiff said that he did not need to come outside for that, since Fitzgerald could hand the appearance ticket to him through a hole in the screen door. However, Fitzgerald said he would not do that. Consequently, Plaintiff terminated the conversation and began to close the solid inner door of his house. Fitzgerald then quickly opened the screen door, pushed open the solid inner door that

---

[3]Pl. 50-h hearing at p. 19 ("A. I asked him what he was doing in the house. Q. When did you ask that question? A. When I turned around and realized he was following me in the house.").

Plaintiff was attempting to close, entered the kitchen and arrested Plaintiff. In that regard, upon pushing his way inside the house, Fitzgerald pushed Plaintiff forward over the kitchen table, applied an "arm bar" hold to Plaintiff's right arm, said, "You're going to jail now, buddy," and then walked Plaintiff out of the house and placed him in the back of the police car. Fitzgerald then remained outside of the police car, while Asquino, who sat inside the car, asked Plaintiff for pedigree information. Although Fitzgerald had stated that Plaintiff was "going to jail," Plaintiff's wife intervened and informed the officers that Plaintiff had previously been employed as an Ontario County Sheriff's deputy, at which point the officers issued Plaintiff an appearance ticket and released him. The entire incident, from the time the officers arrived until they left, lasted approximately thirty minutes.

Plaintiff maintains that the criminal charge against him for issuing a bad check was later dismissed.

Following the arrest, Plaintiff complained to the Ontario County Sheriff's Office and attempted to file criminal charges against Fitzgerald and Asquino. However, neither the Ontario County Sheriff, nor any other police agency that Plaintiff contacted, took action against Fitzgerald or Asquino. Apparently, though, in response to Plaintiff's complaint, Fitzgerald and Asquino each submitted an unsworn written statement about the arrest to the Ontario County Sheriff. *See*, "EBT Exhibits" 2B and 2C, dated September 4, 2008. Those unsworn written statements differ significantly from Plaintiff's sworn account in several respects. For example, the officers state that shortly after they arrived at Plaintiff's house, he invited both of them inside the house. Moreover, the officers both suggest that Plaintiff came outside the house to speak to them, and that they only used force against Plaintiff

4

when he attempted to flee into his house. *See*, Asquino Stmt. ("At this point, Mr. Morse . . . made a sudden action to *re-enter* his home. Deputy Fitzgerald grabbed Mr. Morse by the arm and pulled him away from the front door to prevent him from re-entering the house.") (emphasis added); Fitzgerald Stmt. ("Mr. Morse then made a sudden move back into his house. I reached for him to prevent him from going *back into the house*. I placed his hands behind his back and advised him he was now under arrest.") (emphasis added). However, in connection with the instant motions, neither Fitzgerald nor Asquino submitted a sworn statement to challenge Plaintiff's version of events, and Defendants' Statement of Facts [#37-22] fails to cite any evidentiary proof in admissible form to support the officers' unsworn statements.[4] Consequently, the undisputed facts of record indicate that Plaintiff never stepped out his house until after he was placed under arrest.

On or about September 3, 2008, Plaintiff signed, and apparently served, a Notice of Claim pursuant to New York General Municipal Law 50-e against Ontario County. The Notice of Claim referenced claims for assault, battery, trespass, negligence, intentional infliction of emotional harm, prima facie tort, violation of civil rights, and conspiracy to violate constitutional rights under color of state law, arising from the arrest by Fitzgerald and Acusto on June 6, 2008. The Notice of Claim includes an allegation that during the arrest, Fitzgerald

---

[4]As discussed below, Defendants' legal arguments are based on the assumption that Plaintiff was arrested inside of his home, near the door. *See*, Defs. Memo of Law [#37-23] at p. 3 (referring to Plaintiff being arrested "at or about the doorway of his residence."); pp. 5, 21-22 ("Then, in an attempt to evade arrest, and just as Mr. Morse started to close the door, Deputy Fitzgerald grabbed Mr. Morse." [sic]); Reinhardt Reply Decl. [#44] at ¶ ¶ 16(g) & (I) ("Mr. Morse handed the paperwork to Deputy Fitzgerald at the doorway . . . [and]when Mr. Morse started to close the door, Deputy Fitzgerald grabbed Mr. Morse within two to three inches or a quarter second of the doorway." [sic]); Id. at p. 8 ("[T]he arrest at the doorway was lawful.").

"force[d] Mr. Morse's arm behind his back causing injury to the rotator cup [sic] of the shoulder." *See*, Complaint [#1], attached Notice of Claim.

On June 7, 2010, Plaintiff commenced this action, proceeding *pro se*. The Complaint purported to state claims for "assault, battery, trespass, negligence, intentional infliction of emotional harm, prima facie tort, violation of civil rights, and conspiracy to violate constitutional rights under color of state law," against Ontario County, Fitzgerald and Asquino. Complaint [#1] p. 1. On June 24, 2010, this Court granted Plaintiff's application to proceed *in forma pauperis*, and dismissed the claim against Ontario County pursuant to 28 U.S.C. § 1915(e)(2).

On June 28, 2011, prior to the court-imposed deadlines for completing discovery, Plaintiff filed his subject motion for summary judgment. (Docket No. [#21]). The Court liberally construes the motion as seeking partial summary judgment as to liability on all claims. The Court held the motion in abeyance pending the completion of discovery and the filing of any dispositive motion by Defendants. *See*, Order [#26]. Following the completion of discovery, Defendants filed their subject motion [#37] for summary judgment.[5] Defendants argue, in pertinent part, that they are entitled to summary judgment on the false-arrest and excessive-force claims, since their actions in arresting Plaintiff near his doorway were "objectively reasonable" as a matter of law, and since the force they used during the arrest was "*de minimis*" as a matter of law. On these points, Defendants' motion does not rely on any affirmative sworn submissions from either Defendant, but instead, maintains that Defendants are entitled to summary judgment even assuming that the Court accepts the

---

[5]Defendants' Notice of Motion [#37] included an *Irby* notice to the *pro se* Plaintiff.

sworn statements of Plaintiff and his witnesses. Alternatively, Defendants maintain that they are entitled to qualified immunity. Defendants also contend that Plaintiff's state-law claims are time barred. On February 28, 2013, Plaintiff, appearing *pro se*, and Defendants' counsel, appeared before the undersigned for oral argument of the motion.

DISCUSSION

*Rule 56*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), cert denied, 517 U.S. 1190 (1996).

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no

reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

<u>Section 1983 Claims</u>

The Court liberally construes the Complaint to alleged, pursuant to Section 1983, that Defendants violated Plaintiff's Fourth Amendment rights in three respects: 1) by entering his house; 2) by arresting him without a warrant; and 3) by using excessive force during the arrest. "In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that some person acting under color of state law deprived him of a federal right." *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir.1986).

*Asquino's physical entry into Plaintiff's home*

Liberally construing Morse's Complaint, he maintains that Asquino violated his Fourth Amendment rights, by conducting an illegal "search" of the house, when he physically entered Plaintiff's home without permission, as Plaintiff was retrieving documentation. Specifically, Plaintiff indicates that Asquino opened the screen door, entered the house, walked through the kitchen area, and watched Plaintiff as he located the paperwork. On this point, in general,

> [t]he Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." "At the very core" of the Fourth Amendment "stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United*

*States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no. *See Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

*Kyllo v. U.S.*, 533 U.S. 27, 31, 121 S.Ct. 2038, 2041-2042 (2001). In this regard, "a Fourth Amendment *search* occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Id*. (emphasis added). Moreover, it is clear that this expectation of privacy "exists" and is "reasonable" with regard to "the interior of homes." *Id*., 121 S.Ct. at 2043; *see also, id*. at 2045 (referring to "the Fourth Amendment sanctity of the home."). "The Fourth Amendment's warrant requirement protects one's privacy interest in home or property. Absent exigent circumstances or some other exception,[6] the police must obtain a warrant before they enter the home to conduct a search or otherwise intrude on an individual's legitimate expectation of privacy." *U.S. v. Gori*, 230 F.3d 44, 50 (2d Cir. 2000).

It is clear that, as part of this action, Plaintiff is complaining about the warrantless entry of his home. For example, the Complaint states:

> Fitzgerald asked me to step outside the home. I asked what for? He said in regards to a check and asked [me] to step outside again which I did not. Deputy Fitzgerald went back to his car stating that he was just going to issue an appearance ticket. I then told him that I had just received paperwork in the mail today from the bank and I went to get it. Fitzgerald told [Asquino] to stay with me. [Asquino] came into my house standing in my kitchen while my wife was trying to change her clothes. I took the paper dated June 3, 2008

---

[6]For example, police officers may perform a warrantless protective sweep when: 1) they are already inside a home to execute an arrest warrant, or they are inside the home "under lawful process"; and 2) they possess specific articulable facts giving rise to a reasonable inference of danger. *U.S. v. Hassock*, 631 F.3d 79, 87 (2d Cir. 2011).

> (certificate of protest) back to the door along with the last bill from E&V Energy and I told him that there was a $259.32 CREDIT dated 04/30/08. [Asquino went back outside as I stayed in the house behind a screen door. ([Asquino] was NOT asked in at any time).

Complaint [#1], attached narrative dated June 6, 2008. Similarly, Plaintiff's Notice of Claim, which is attached to the Complaint, states: "Mr. Morse walked away from the door and Deputy [Asquino] entered the residence without authorization." Strangely, though, Defendants' papers do not address this specific claim. At most, Defendants argue *generally* that their conduct throughout the incident was reasonable.

Consequently, the Court finds, based on the undisputed evidentiary proof in admissible form contained in the record, that Asquino violated Plaintiff's Fourth Amendment rights by entering the house.[7] In that regard, the officer did not have a warrant, and there were no exigent circumstances. Nor is there any evidentiary proof in admissible form that Plaintiff consented to Asquino's entry into the home. *See, U.S. v. Taylor*, 279 F.Supp.2d 242, 246 (S.D.N.Y. 2003) ("This is not a case where an individual 'opened the door wider and stood back,' *United States v. Sanchez*, 635 F.2d 47, 55 (2d Cir.1980), 'invited' the police 'to talk in the living room,' [*U.S. v.*] *Deutsch*, 987 F.2d [878,] 881 [(2d Cir. 1993)], or otherwise ratified non-consensual entry by warning a following officer to avoid a hazard, *Gerald M. v. Conneely*, 858 F.2d 378, 384 (7th Cir.1988)."). To the contrary, Plaintiff specifically denies that he gave consent. Moreover, Plaintiff remained behind the closed screen door at all

---

[7]Although Fitzgerald did not personally enter Plaintiff's house at that time, the record indicates that after Plaintiff indicated that he was going to retrieve paperwork relating to the check, Fitzgerald ordered Asquino to "stay with" Plaintiff, which prompted Asquino to come inside the house and watch Plaintiff. *See,* Pl. 50-h hearing at p. 17. A supervisor may be personally liable for ordering a subordinate to commit a constitutional violation. *See, Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (*citing Sostre v. McGinnis*, 442 F.2d 178, 205 (2d Cir. 1971)).

times, declined the officers' request to come outside, told them that they needed a warrant, and asked Asquino why he was in the house after noticing that Asquino had come inside.

Nor does it appear that Asquino is entitled to qualified immunity as to this claim. In that regard, Asquino does not specifically address this claim at all, let alone claim such immunity as to it. However, even assuming, *arguendo*, that he had made such an argument, the Court would find, as a matter of law, that he is not entitled to qualified immunity as to this violation. On this point, the law regarding qualified immunity is clear:

> Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. . . . [C]ourts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first.

*Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (citations omitted). "Qualified immunity is an affirmative defense and the burden is on the defendant-official to establish it on a motion for summary judgment." *Bailey v. Pataki*, — F.3d —, 2013 WL 535744 at *12 (2d Cir. Feb. 14, 2013).

> Defendants are entitled to qualified immunity if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law. To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. In determining whether a right is *clearly established*, we consider (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful. In assessing *objective reasonableness*, we look to whether officers of reasonable competence could disagree on the legality of the defendant's actions.

11

*McGarry v. Pallito*, 687 F.3d 505, 512 (2d Cir. 2012) (emphasis added; citations and internal quotations omitted).

> The objective reasonableness test is met, and police officers will enjoy qualified immunity, if the question whether the officers would be violating rights is one on which officers of reasonable competence could disagree. If, on the other hand, no officer of reasonable competence would conclude that the conduct in question is lawful, there is no immunity.

*Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 433 (2d Cir. 2009)(citations and footnote omitted).

> In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment. An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances. Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate.

*Lennon v. Miller*, 66 F.3d 416, 420-421 (2d Cir. 1995) (citation omitted); *see also, Loria v. Gorman*, 306 F.3d 1271, 1282 (2d Cir. 2002) ("If the officer reasonably believed that his actions did not violate the plaintiff's rights, he is entitled to qualified immunity even if that belief was mistaken. However, if his belief was not objectively reasonable, qualified immunity offers him no solace[.]").

Applying these principles to the facts of the instant claim, the Court finds first, and it is undisputed, that the Fourth Amendment right at issue was clearly established. Moreover, it was objectively unreasonable for Asquino to believe that, in connection with his investigation of a bad check complaint, he was entitled to walk into Plaintiff's house

uninvited, when he had neither a warrant nor exigent circumstances. *See, e.g., U.S. v. Taylor*, 279 F.Supp.2d at 246 ("Taylor explicitly indicated that communication with his mother was a precondition to the police officers' entry. His failure to object to their entrance would be meaningful only if the officers had reason to think Taylor knew they were behind him, which they did not. The clear import of Taylor's answer-that the officers' entry could only be approved by his mother-combined with the absence of any other act by Taylor that could reasonably be construed as consent under the circumstances, compels the conclusion that no reasonable officer would have crossed the threshold of that apartment, much less followed Taylor through his home."). Accordingly, Asquino is not entitled to qualified immunity, and Plaintiff is therefore entitled to partial summary judgment on this claim as to liability.

*Fitzgerald's warrantless arrest of Plaintiff*

Liberally construing Plaintiff's Complaint, he contends that Fitzgerald violated his Fourth Amendment rights, when he arrested him inside his home without a warrant. Fitzgerald concedes that he arrested Plaintiff without a warrant, "at or about the doorway of his residence." Def. Memo of Law at p. 3. Fitzgerald maintains, though, that the warrantless arrest was lawful, since he had probable cause. Def. Memo of Law at p. 2. Fitzgerald does not claim any exigent circumstances, and in any event, the fact that Plaintiff refused to go outside to the officers' police car to receive his appearance ticket is not an exigent circumstance. *See, Burke v. Cicero Police Dept.*, No. 5:07–CV–624 (FJS/DEP), 2011 WL 1232107 at *5 (N.D.N.Y. Mar. 30, 2011) ("It is without question that Defendants had probable cause to issue Plaintiff an appearance ticket and arrest her for the September 8, 2008

incident at the school. Beyond that, however, Defendants failed to establish exigent circumstances to justify their forcible entry into Plaintiff's home to effect a warrantless arrest. *Plaintiff's refusal to exit her home to allow the officers to serve her with an appearance ticket is not an exigent circumstance justifying their conduct.*") (emphasis added).  Accordingly, the Court finds, as a matter of law, that Fitzgerald violated Plaintiff's Fourth Amendment rights by arresting him inside his home, without a warrant or exigent circumstances.

Contrary to Defendants' argument, Plaintiff's arrest was not lawful pursuant to *U.S. v. Santana*, 427 U.S. 38, 96 S.Ct. 2406 (1976).  The warrantless in-home arrest in *Santana* was justified by the exigent circumstance of "hot pursuit." *See, U.S. v. Gori*, 230 F.3d at 52 n. 3 ("Breaking the threshold of the doorway triggered the warrant requirement, but the Court found the officer's entry into Santana's home justified by an exigent circumstance. *See Santana*, 427 U.S. at 42–43, 96 S.Ct. 2406 (discussing "hot pursuit" exception to the warrant requirement)").[8]  Nevertheless, the Court in *Santana* indicated that police could arrest someone standing in the open doorway of her home, exposed to public view. *Santana*, 96 S.Ct. at 2409 (Indicating that when Santana was standing in her open doorway, she "was in a 'public' place. She was not in an area where she had any expectation of privacy. What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection.  She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house.") (citations and internal quotation marks omitted).  In *U.S. v. Gori*, 230 F.3d at 52

---

[8]The Supreme Court summarized its *Santana* holding as follows: "We thus conclude that a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under *Watson*, by the expedient of escaping to a private place."  Id., 96 S.Ct. at 2410.

n.4, a Second Circuit panel, in dicta, questioned, without answering, whether *Santana* would apply in a situation where a person opened his door in response to a knock by the police. *See, id.* ("Because the defendants opened the door in response to a knock initiated by someone whom they invited—not by the police or someone acting as a subterfuge for the police—we need not consider whether a suspect loses the heightened protection of *Payton* merely by opening a door in response to a knock by law enforcement.").  However, even if that were true, which the Court doubts, *Santana* still would not apply here, since Plaintiff remained at all times behind his closed screen door.  Consequently, unlike the arrestee in *Santana*,  Plaintiff was not "as exposed to public view, speech, hearing, and touch as if [he] had been standing completely outside [his] house." *U.S. v. Gori*, 230 F.3d at 52 (quoting from *Santana*, 96 S.Ct. at 2406). *See, Breitbard v. Mitchell*, 390 F.Supp.2d 237, 248 (E.D.N.Y. 2005) ("The Second Circuit has generally found *Santana's* reasoning inapplicable when the arrestee attempts to stay within his or her home.").

In a similar case, the Seventh Circuit held that *Santana* does not apply where, as here, the arrestee remained inside his home behind a closed screen door:

> This . . . is a case where *Payton* applies. What puts this case beyond . . . *Santana* . . . —and is most critical here, is that Sparing stood inside his home, behind his closed screen door. He was neither in a public place, e.g., outside[,] voluntarily in an open doorway, also a public place (*Santana*), or answering a knock at the door and standing fractions of an inch behind an open doorway[.] Because we are guided not by the "common law of property," *Santana*, 427 U.S. at 42, 96 S.Ct. 2406, but by the Fourth Amendment privacy interest as identified in *Katz* [*v. U.S.*, 389 U.S. 347, 88 S.Ct. 507 (1967)], this difference is significant. Sparing was not exposed to "public view, speech, hearing, and touch" as if he were standing outside, in a public place (voluntarily or otherwise). As a consequence, we apply *Payton*—Sparing did not surrender any reasonable expectations of privacy in his home. Without a warrant, this

arrest could only be completed if Sparing opened his screen door, and stepped outside of his home or acquiesced to a slight entry to complete the arrest. For [Officer] Keith to enter the home without a warrant, as he did in this case, he first needed Sparing's consent.

*Sparing v. Village of Olympic Fields*, 266 F.3d 684, 690-691 (7th Cir. 2001) (footnote omitted).

Fitzgerald nevertheless maintains that he is entitled to qualified immunity, because he acted reasonably. However, the Court disagrees. In that regard, the constitutional right at issue was clearly established. *See, e.g., Bauer v. City of Hartford*, Civ. No. 3:07-cv-1375(PCD), 2010 WL 4429697 at *9 (D.Conn. Oct. 29, 2010) ("The first prong of the qualified immunity test—whether the constitutional right at issue is clearly established—has a clear answer in this case. In *United States v. Payton*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court established a bright-line rule prohibiting a warrantless arrest of a suspect inside his home absent exigent circumstances or the suspect's consent to enter. There are few constitutional rights more clearly established than the right to be free from a search or seizure in one's own home in the absence of a warrant or in the absence of a well-delineated exception to the warrant requirement.") (citation and internal quotation marks omitted).

Moreover, the warrantless arrest was not objectively reasonable under the circumstances presented here. *See, Williams v. City of New York*, No. 10–CV–2676 (JG)(LB), 2012 WL 511533 at *9 (E.D.N.Y. Feb. 15, 2012) ("[T]he warrantless arrest of a suspect in his home absent exigent circumstances or consent violates clearly established law. *Loria*, 306 F.3d at 1286. No reasonable officer could have concluded that he could enter [murder suspect] Williams's home to arrest him merely because he had opened the door in

response to the officer's knock, but then retreated into his home to get dressed. Qualified immunity is therefore unavailable."); *see also, Breitbard v. Mitchell*, 390 F.Supp.2d at 249 ("An officer's failure to obtain a warrant where the individual has committed a minor offense and there are no exigent circumstances displays a shocking lack of all sense of proportion.") (citation and internal quotation marks omitted); *Burke v. Cicero Police Dept.*, No. 5:07–CV–624 (FJS/DEP), 2011 WL 1232107 at *4 ("N.D.N.Y. Mar. 30, 2011) ("Plaintiff was charged with a nonviolent misdemeanor and violation. In such circumstances, courts are loathe to find warrantless arrests in a home reasonable.") (citation omitted).

Accordingly, Plaintiff is entitled to partial summary judgment against Fitzgerald as to liability on this claim.

### *Fitzgerald's alleged excessive force*

Plaintiff contends that Fitzgerald used excessive force, while physically forcing him out of his house and into the police car.[9]  The law concerning excessive force is clear:

> To establish a section 1983 claim for excessive force, a plaintiff has the burden of showing that, under the Fourth Amendment, the use of force was objectively unreasonable in light of the facts and circumstances confronting the officers, without regard to the officers' underlying intent or motivation.  This determination requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

---

[9]To the extent that Plaintiff is attempting to assert a warrantless seizure and excessive force claim against Asquino, he has not come forward with any evidence of Asquino's personal involvement or any argument in support of such liability.  In that regard, according to Plaintiff's sworn testimony, Fitzgerald's seemingly impulsive entry into the home and his use of force in effecting the arrest happened so quickly that it does not appear that Asquino had any opportunity to intervene even if he had wanted to do so. *See, Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (To be liable for failure to intervene, the officer must have "either [been] aware of [the excessive force]  or had an opportunity to intercede.").

*Burke v. Cicero Police Dept.*, 2011 WL 1232107 at *5 (citations and internal quotation marks omitted); *see also, Weather v. City of Mount Vernon*, No. 11–1567–cv, 474 Fed.Appx. 821, 823 (2d Cir. Apr. 11, 2012) ("In *Graham v. Connor*, the Supreme Court held that a reasonableness standard applied to Fourth Amendment excessive force claims. 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Court indicated that three factors to consider in assessing reasonableness include: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' *Id.*").

"Physical force is often necessary when effectuating arrests or executing search warrants and, thus, not every push or shove is unconstitutionally excessive, even if it may later seem unnecessary in the peace of a judge's chambers." *Stokes v. City of New York*, No. 05-CV-0007 (JFB)(MDG), 2007 WL 1300983 at *10 (E.D.N.Y. May 3, 2007) (citation and internal quotation marks omitted). Routine handcuffing at the time of arrest, "absent something more," ordinarily will not constitute excessive force. *Id*. at *11; *but see, Soares v. State of Conn.*, 8 F.3d 917, 921 (2d Cir. 1993) ("Although handcuffing will be the reasonable course in many, if not most arrest situations, we do not accept the principle that handcuffing is *per se* reasonable."). On the other hand, it is clear that "officers may not gratuitously inflict pain in a manner that is not a reasonable response to the circumstances." *Stokes v. City of New York*, 2007 WL 1300983 at *10 (citation and internal quotation marks omitted).

At the outset, the fact that Plaintiff's arrest may have been unlawful does not establish, *per se*, that the force used against him was excessive. *See, Jones v. Parmley*,

465 F.3d 46, 62 (2d Cir. 2006) ("[T]he reasonableness test established in *Graham* [*v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989)] remains the applicable test for determining when excessive force has been used, including those cases where officers allegedly lack probable cause to arrest.").

Nevertheless, the Court finds, based on the totality of circumstances, and as a matter of law, that Fitzgerald's use of force against Plaintiff was not reasonable. In that regard, several facts are significant. First, the incident arose in connection with a complaint over an alleged bad check, therefore the crime was hardly "severe." Moreover, there is no indication that Plaintiff posed a threat to the safety of the officers or anyone else, or that Plaintiff was resisting arrest. On those points, Plaintiff stated under oath that: 1) he told the officers, through the closed screen door, that he was not going to come outside since they did not have a warrant, thereby ending the conversation; 2) he began closing the inner door; 3) Fitzgerald pulled open the screen door and pushed open the inside door; 4) Fitzgerald shoved him approximately four feet,[10] into the kitchen; 5) Fitzgerald pushed him forward over the kitchen table and applied an arm bar;[11] 6) Fitzgerald used the arm bar to control him and walk him out to the police car; and 7) Fitzgerald's use of force exacerbated a pre-existing shoulder injury, for which he later had surgery.

Defendants have not submitted any evidentiary proof in admissible form to controvert Plaintiff's version of events. That is, Defendants have not explained why *any* amount of force was necessary under the circumstances. In any event, it is undisputed that Plaintiff did

---

[10]Morse Dep. at p. 45.

[11]*Id*. at p. 46.

not threaten the officers. Defendants argue, though, that Plaintiff "attempted to evade arrest" by closing his door.[12] However, Plaintiff had every right to close his door. Moreover, Fitzgerald never told Plaintiff that he was being arrested, until after he pinned Plaintiff to the kitchen table, placed him in an arm bar, said, "You're going to jail now, buddy." Consequently, Plaintiff never had an opportunity to resist being arrested prior to Fitzgerald's use of force. Fitzgerald's use of force was, in effect, a sudden an unprovoked attack on a man who correctly believed that he was constitutionally protected from being arrested inside his home at that moment.

Fitzgerald is not entitled to qualified immunity. First, the constitutional right at issue was clearly established. *See, Loria v. Gorman*, 306 F.3d at 1283-1284 (Discussing the "firmly established rule" hat "police officers need either a warrant or probable cause plug exigent circumstances in order to make a lawful entry into a home."). Moreover, on the facts discussed above, it was not objectively reasonable for Fitzgerald to believe that his actions did not violate Plaintiff's constitutional rights. *See, Loria*, 306 F.3d at 1286 ("[W]e hold that under the circumstances no reasonable officer could have concluded that – simply because Loria was near the door – taking two steps into the house and seizing Loria did not constitute a Fourth Amendment entry."); *see also, Weather v. City of Mount Vernon*, 474 Fed.Appx. at 824 ("The law protecting a person against excessive force in this situation is clearly established. Weather was breaking no law, was not resisting arrest, and was not placing himself or others in danger. No reasonable officer would believe that "twisting Mr. Weather's arm behind his back and pushing or shoving him into the brick wall outside the school" was

---

[12]Def. Memo of Law [#37-23] at p. 5.

a lawful use of force in this circumstance, and appellants point us to no cases that indicate otherwise.").

Accordingly, Plaintiff is entitled to partial summary judgment as to liability on this claim.

## Conspiracy Under Section 1985

The Complaint also alleges that Defendants conspired to violate Plaintiff's constitutional rights, in violation of § 1985. "In order to make out a Section 1985(3) claim, the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Robinson v. Allstate Ins. Co.*, No. 11–4348–cv, 2013 WL 216407 at *2 (2d Cir. Jan. 22, 2013) (citation and internal quotation marks omitted).

Defendants maintain that Plaintiff has not identified any evidence of a conspiracy between Fitzgerald and Asquino to violate his federal constitutional rights. The Court agrees.[13] Accordingly, Defendants are entitled to summary judgment on the § 1985 conspiracy claim.

## The State Law Claims Are Untimely

---

[13]See, Pl. Resp. to Defs. Motion [#43] at p.2. Plaintiff offers only conclusory accusations of a conspiracy.

Under New York law, intentional torts must generally be commenced within one year, *see*, CPLR § 215(3), and negligence claims must generally be commenced within three years, see, CPLR § 214(5).   However, actions for torts committed by municipal defendants must be commenced within one year and 90 days "after the happening of the event upon which the claim is based," pursuant to General Municipal Law § 50-I, which takes precedence over the ordinary statutes of limitations. *Bosone v. County of Suffolk*, 274 A.D.2d 532, 712 N.Y.S.2d 128 (2d Dept. 2000) ("Causes of action to recover damages for intentional torts committed by municipal defendants, however, must be commenced within the one-year and 90–day period contained in General Municipal Law § 50–I, which takes precedence over the one-year period of limitations provided for in CPLR 215.") (citations omitted); *accord, Ruggiero v. Phillips*, 292 A.D.2d 41, 44, 739 N.Y.S.2d 797, 799 (4th Dept. 2002) .

In the instant case, both defendants are municipal employees, and Plaintiff maintains that he properly served a Notice of Claim, as required by General Municipal Law § 50-e. However, the action is based on events that occurred on June 6, 2008, and Plaintiff did not commence this action until June 7, 2010, which is more than one year and ninety days later. Accordingly, even assuming *arguendo* that Plaintiff otherwise met the procedural requirements of the General Municipal Law,[14] his state-law tort claims are time-barred, and must be dismissed.[15]

---

[14]As Defendants point out, the Complaint [#1] does not appear to comply with the pleading requirements of General Municipal Law § 50-i(1).

[15] Gen. Mun. Law § 50-i does not trump the three-year statute of limitations for actions under Section 1983. *See, e.g., Capo v. County of Steuben*, No. 11–CV–6447–CJS, 2012 WL 777487 at *5 (W.D.N.Y. Mar. 8, 2012).  Accordingly, Plaintiff's § 1983 claims did not need to be filed within one year and ninety days.

CONCLUSION

The applications [#21] [#37] are each granted in part and denied in part. Plaintiff's state-law claims and § 1985 conspiracy claim are dismissed, but he is granted partial-summary judgment as to liability on his § 1983 claims as follows: Against Asquino for warrantless entry, and against Fitzgerald for warrantless arrest and excessive force. Defendants' motion is granted as to the state-law claims and § 1985 claim, which are dismissed, but is otherwise denied. The Clerk of the Court is directed to amend the docket sheet in this action to reflect the Defendants' correct names, as set forth in the caption above.

SO ORDERED.

Dated:      March 20, 2013
            Rochester, New York

                                    ENTER:


                                     /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Jusdge